# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 2, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2020AP387-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2017CF3732

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

EMMANUEL SANCHEZ,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County:  DAVID L. BOROWSKI, Judge.  *Affirmed*.

Before Dugan, Graham and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Emmanuel Sanchez appeals his judgment of conviction for first-degree intentional homicide and knowingly violating a domestic abuse injunction. Sanchez argues that the trial court erred in denying his request that the jury be given an instruction on second-degree reckless homicide. Assuming without deciding if the trial court erred in not giving the requested instruction, we conclude that any such error was harmless, and we affirm.

## BACKGROUND

¶2 Sanchez was charged with first-degree intentional homicide and knowingly violating a domestic abuse injunction for his involvement in the death of his ex-girlfriend, C.L. The complaint alleged that, on August 11, 2017, officers were called to the residence at 1510 South 25th Street in the City of Milwaukee regarding a reported stabbing. The officers found C.L. lying on her back on the floor with a butcher knife sticking out of her chest.

¶3 C.L.'s two roommates were at the scene and told police that, on the night of the stabbing, C.L. was preparing to go on a date with someone she had just met.[1] C.L. told her roommates that she was leaving and walked out of the living room. The roommates then heard C.L. screaming for help. The roommates found C.L. in the bathroom with Sanchez over her. C.L. was lying in the bathtub and trying to push Sanchez off her. One of the roommates struggled with Sanchez and chased him out of the house. When that roommate returned, C.L. was

---

[1] The complaint also states that one of the roommates said that both roommates agreed to move in with C.L. to provide her with extra support and protection from Sanchez.

standing in the kitchen with a knife sticking out of her chest—she was trying to pull the knife out.[2]  The roommates convinced C.L. to lie down on the floor.

¶4     The complaint further alleged that, while paramedics were at the residence, the police received a 911 call from Sanchez's brother, J.S.  J.S. told police that Sanchez begged him to pick Sanchez up at a park, where he was hiding.  When he picked him up, Sanchez told J.S. that he had stabbed C.L. and wanted to kill himself.  While J.S. was calling 911, Sanchez jumped out of the car and ran off.

¶5     The matter proceeded to a jury trial, and the testimony of C.L.'s roommates and Sanchez's brother was consistent with the allegations in the complaint.

¶6     At the close of evidence, the trial court held a jury instruction conference, where it heard arguments from the parties regarding the appropriate jury instructions that should be given to the jury.[3]  Trial counsel argued that the jury should be instructed on second-degree reckless homicide because C.L.'s fingerprints were on the knife, the evidence was inconclusive whether Sanchez touched the handle of the knife—one theory was that C.L. had the knife first and she and Sanchez were struggling over the knife, and the knife went into C.L. when

---

[2] The complaint stated that an investigation indicated that the knife was not from C.L.'s residence, and the roommates confirmed in their testimony at trial that they did not recognize the knife.

[3] Sanchez waived his right to testify and did not testify.

they both fell into the tub together—and that does not establish utter disregard for human life.[4]

¶7     The State objected to the request for a jury instruction on second-degree reckless homicide.  It argued that the rational inference from the evidence was that Sanchez broke into the house through a window and crept up the stairs and met C.L. at the top of the stairs as she was leaving, stabbed her in the chest and forced her into the tub.  The trial court responded saying, "Let me jump in."  It stated that it could see how a rational jury could possibly come to a conclusion of first-degree reckless homicide as opposed to a first-degree intentional homicide.  It then stated that "[t]he conduct engaged in by the defendant either was absolutely first-degree intentional homicide … or there may have been some level of confrontation ….  But, in either event, it certainly showed utter disregard for human life[.]"  It then told the parties that it would give the jury instructions for first-degree intentional homicide and first-degree reckless homicide, but would not give the instruction of second-degree reckless homicide because it was not appropriate under the facts of the case.

¶8     The trial court then instructed the jury on both first-degree intentional homicide and first-degree reckless homicide.  The jury found Sanchez guilty of first-degree intentional homicide and knowingly violating the domestic abuse injunction.

---

[4] The distinction between first-degree reckless homicide and second-degree reckless homicide is that second-degree reckless homicide does not include the element of "utter disregard for human life."  WISCONSIN STAT. § 940.02(1) (2017-18)—first-degree reckless homicide—provides "[w]hoever recklessly causes the death of another human being under circumstances which show utter disregard for human life is guilty[.]"  However, WIS. STAT. § 940.06 (2017-18)—second-degree reckless homicide—provides "[w]hoever recklessly causes the death of another human being is guilty[.]"

¶9      Sanchez now appeals and argues that "[d]enial of his request for a lesser-included offense jury instruction on second-degree reckless homicide was prejudicial error."[5]

## DISCUSSION

### A.      Standard of review

¶10      "While this court gives the circuit court broad discretion with respect to the submission of jury instructions, the issue of whether the evidence adduced at trial permits the giving of a lesser-included offense instruction presents a question of law which we review *de novo*." *State v. Glenn*, 199 Wis. 2d 575, 581-82, 545 N.W.2d 230 (1996).

### B.      Legal principles

¶11      In assessing whether to grant a lesser-offense jury instruction, "the court must first determine whether 'the lesser offense is, as a matter of law, a lesser included offense of the crime charged.'" *See State v. Fitzgerald*, 2000 WI App 55, ¶8, 233 Wis. 2d 584, 608 N.W.2d 391 (citation omitted). "If so, then the court considers whether the evidence justifies the instruction." *Id.* In this case, the State concedes that where first-degree intentional homicide is charged, both first-degree reckless homicide and second-degree reckless homicide are lesser-included offenses of first-degree intentional homicide. As to the second step in

---

[5] We note that although Sanchez's notice of appeal states that he appeals from the judgment of conviction and sentence against him, on appeal Sanchez does not raise any issue regarding his conviction on the charge of knowingly violating the domestic abuse injunction or his sentence. Therefore, he has abandoned any argument regarding those issues, if any. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491-92, 588 N.W.2d 285 (Ct. App. 1998).

determining whether to grant the lesser-included offense instruction, namely whether the evidence justifies the instruction, Sanchez argues that the evidence justifies giving the instruction, and the State argues that it does not.

### C.   Any error in the trial court not giving the second-degree reckless homicide jury instruction was harmless

¶12   The State argues that, even if there was an evidentiary basis to support giving a second-degree reckless homicide jury instruction, any error in the court not giving the instruction was harmless because the jury convicted Sanchez of the greater offense—first-degree intentional homicide.[6]  The State asserts that the jury does not consider a lesser offense until it decides to acquit the defendant on the greater charge.[7]  *See* WIS JI—CRIMINAL 112; *State v. Truax*, 151 Wis. 2d 354, 361-63, 444 N.W.2d 432 (Ct. App. 1989).  It then asserts that because the jury found Sanchez guilty of first-degree intentional homicide, it never even considered the first-degree reckless homicide offense that it was given.  It then argues that even if the jury had been given a second-degree reckless homicide instruction, the jury never would have considered it.  *See Truax*, 151 Wis. 2d at

---

[6] We note that the State first argued that, based on the evidence introduced at trial, the trial court did not err in concluding that the jury instruction was not justified.  Based upon our decision today, we need not address the State's argument.

[7] We note that the State misstates when the jury considers the lesser-included offense. The jury need not decide to acquit the defendant on the greater charge before considering the lesser-included instruction.  As stated in WIS JI—CRIMINAL112, "if after full and complete consideration of the evidence, you conclude that further deliberation would not result in a unanimous agreement on the charge of [first-degree intentional homicide], you should consider whether the defendant is guilty of [first-degree reckless homicide]."  The trial court in this case read a substantially similar instruction to the jury and stressed that only after the jury "fully and completely considered the evidence [and] you conclude that further deliberations would not result in a unanimous agreement of the charge of first-degree intentional homicide, then, and only then, you should consider whether the defendant is guilty of first-degree reckless homicide."

361-63. The State then argues that even if there had been an evidentiary basis to support an instruction on second-degree reckless homicide, any error in not giving the instruction was harmless. *See id.* at 356.

¶13 In *Truax*, the jury was instructed on first-degree murder and the lesser-included second-degree murder, and it found Truax guilty of first-degree murder. *Id.* at 358. On appeal, Truax argued that the trial court erred in refusing to instruct the jury on the lesser-included offense of homicide by reckless conduct. *Id.* at 361. The *Truax* court concluded that "under the facts of this case, and considering that the jury was given instructions on both first-degree and second-degree murder and found Truax guilty of the greater offense, any error by omitting the instruction [homicide by reckless conduct] was harmless." *Id.* at 356. It explained that it was persuaded by the Florida Supreme Court's decision in *State v. Abreau*, 363 So. 2d 1063, 1064 (Fla. 1978), which stated:

> [I]f a defendant is charged with offense "A" of which "B" is the next immediate lesser-included offense (one step removed) and "C" is the next below "B" (two steps removed), then when the jury is instructed on "B" yet still convicts the accused of "A" it is logical to assume that the panel would not have found him guilty only of "C" (that is, would have passed over "B"), so that the failure to instruct on "C" is harmless.

*Truax*, 151 Wis. 2d at 364.

¶14 In this case Sanchez was charged with first-degree intentional homicide and the trial court instructed the jury on first-degree intentional homicide and first-degree reckless homicide—it did not instruct the jury on second-degree reckless homicide. The jury found Sanchez guilty of first-degree intentional homicide.

7

¶15    In his reply brief Sanchez does not even mention ***Truax***, let alone attempt to distinguish the case or refute the State's harmless error argument. Therefore, Sanchez has conceded his argument about instructional error because he failed to include an argument in his reply brief to refute the State's argument in its response brief.  *See **United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that the failure to refute a proposition asserted in a response brief may be taken as a concession).  We, therefore, decline to address the merits of Sanchez's argument that the trial court erred in not giving the instruction on second-degree reckless homicide.

## CONCLUSION

¶16    In sum, assuming without deciding if the trial court erred in not giving a jury instruction on second-degree reckless homicide, we conclude that any such error would be harmless.  Thus, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

8